IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SAMANTHA MARIE KNAUS,

        Plaintiff,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

        Defendant.

No. 06-12-cv-00425-HZ

OPINION & ORDER

Kathryn Tassinari
Brent Wells
HARDER, WELLS, BARON & MANNING, P.C.
474 Willamette, Suite 200
Eugene, Oregon 97401

    Attorney for Plaintiff

S. Amanda Marshall
UNITED STATES ATTORNEY
District of Oregon
Adrian L. Brown
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

1 - OPINION & ORDER

Benjamin J. Groebner
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-7075

    Attorneys for Defendant

HERNANDEZ, District Judge:

    Plaintiff Samantha Knaus brings this action seeking judicial review of the Commissioner's final decision to deny supplemental security income (SSI). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1383(c)(3)). Defendant, conceding error at the administrative level, moves to remand this action for further proceedings. Plaintiff argues that remand for benefits is appropriate. Because I agree with Plaintiff that Dr. Lundblad's opinion establishes disability, I grant the motion to remand, reverse the Commissioner's decision, and remand for an award of benefits.

## PROCEDURAL BACKGROUND

    Plaintiff applied for SSI on October 4, 2006, alleging an onset date of January 1, 2002. Tr. 105-07. Her application was denied initially and on reconsideration. Tr. 76-80, 75, 85-87.

    On February 11, 2009, Plaintiff appeared, with counsel, for a hearing before an Administrative Law Judge (ALJ). Tr. 18-73. At the hearing, Plaintiff amended her onset date to October 2, 2006. Tr. 23. On February 20, 2009, the ALJ found plaintiff not disabled. Tr. 5-17. The Appeals Council denied review. Tr. 1-3.

    Plaintiff appealed the denial to this Court, requesting review of the administrative action. Based on the parties' agreement that the ALJ erred, Judge Marsh issued an Opinion and Order

2 - OPINION & ORDER

reversing the ALJ's decision and remanding the case for further proceedings. Tr. 516-27. The ALJ held a hearing on remand on September 13, 2011. Tr. 392-441. Post-hearing, Plaintiff again amended her alleged onset date to July 1, 2007, corresponding to the date she became clean and sober. Tr. 570. On November 27, 2011, the ALJ issued a decision denying Plaintiff's claim for benefits. Tr. 367-91. The ALJ's decision became final when the Appeals Council did not review the case on its own motion. 20 C.F.R. §§ 404.984, 416.1484.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on back pain associated with having been struck by a vehicle in January of 2003 and a combination of a psychotic disorder, depression, learning disorders, possible post-traumatic stress disorder, and cognitive disorder. Tr. 114, 519. At the time of the September 13, 2011 hearing, she was twenty-eight years old. Tr. 397. She is a high school graduate and has past relevant work experience as a sales assistant, cashier, nursing assistant/caregiver, service station attendant, and fast food cashier/server. Tr. 521. Because the parties are familiar with the medical and other evidence of record, I refer to any additional relevant facts necessary to my decision in the discussion section below.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(3)(a).

Disability claims are evaluated according to a five-step procedure. See Valentine v. Comm'r, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step

procedure to determine disability). The claimant bears the ultimate burden of proving disability. <u>Id.</u>

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." <u>Yuckert</u>, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether plaintiff's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." <u>Yuckert</u>, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. <u>Yuckert</u>, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. <u>Yuckert</u>, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

/ / /

THE ALJ'S DECISION

In the November 2011 decision, the ALJ, at step one, determined that Plaintiff had not engaged in substantial gainful activity since July 1, 2007, the second amended alleged onset date. Tr. 373.  Next, at step two, the ALJ determined that plaintiff has severe impairments of (1) learning disorders in math, spelling, and writing; (2) a history of methamphetamine induced psychosis; (3) social phobia; and (4) methamphetamine dependence in remission.  Tr. 373.  At step three, the ALJ, after a drug abuse analysis, determined that Plaintiff's remaining limitations cause more than a minimal impact on her ability to perform basic work activities and therefore, she has a severe combination of impairments.  Tr. 377.  However, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or equal a listed impairment.  Tr. 378.

Next, at step four, the ALJ determined Plaintiff has a residual functional capacity (RFC) to perform a full range of work at all exertional levels but with the following non-exertional limitations:  (1) she is able to remember simple instructions and tasks, but needs occasional reminders as to her duties; (2) she is capable of occasional and brief contact with coworkers and the general public; and (3) she is able to accept criticism from supportive supervisors. Tr. 379. With this RFC, the ALJ determined that Plaintiff cannot perform her past relevant work. Tr. 382. However, at step five, the ALJ determined that if Plaintiff continued to avoid substances, she could work in a significant number of positions in the national economy. Tr. 383. Thus, the ALJ found Plaintiff "not disabled."  Tr. 385.

STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the

Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009). The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. Rodriguez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1989).

## DISCUSSION

In her Opening Memorandum, Plaintiff argued that the ALJ erred in three respects: (1) in considering the opinions of examining psychologist Ryan Scott, Ph.D. and non-examining psychologist Sandra Lundblad, Ph.D.; (2) in considering the opinion of nurse practitioner Richard Browning; and (3) in determining that Plaintiff is capable of performing jobs that exist in the national economy. The third alleged error is derivative of the first in that Plaintiff argues that if Dr. Scott's or Dr. Lundblad's opinions are properly credited, the hypotheticals presented to the vocational expert (VE) at the hearing become incomplete and thus, lack the ability to support the ALJ's determination regarding the existence of jobs. Plaintiff also argues that the ALJ failed to include in the hypothetical to the VE the ALJ's own finding that Plaintiff has moderate limitations in her concentration, persistence, or pace.

In response, Defendant concedes that the ALJ erred by inadequately addressing Dr. Lundblad's opinion and that the VE provided inconsistent testimony. As a result of Defendant's concession, the issue presented for decision is whether considering the acknowledged errors, the

record supports a determination of disability.

Dr. Scott examined Plaintiff on May 11, 2011.  Tr. 744-52.  He reviewed substantial background records, conducted an interview, and administered questions and tests to determine her mental status.  Id.  His diagnoses were (1) panic disorder with agoraphobia; (2) amphetamine dependence, in sustained full remissions; and (3) disorders in reading, math, and written expression.  Tr. 748.  In the narrative portion of his report, he remarked that Plaintiff had

> only mild impairment in understanding simple instructions and carrying out simple instructions.  This writer would expect her anxiety to cause marked impairment in her ability to make judgments and complex work related decisions and moderate difficulty in understanding and carrying out complex instructions.  This writer would expect her to have mild difficulty interacting appropriately with the public, moderate difficulty interacting with coworkers and marked difficulty in interacting with her supervisors due to significant anxiety.

Id.  In his accompanying checklist, he rated her as markedly limited in her ability to make judgments on complex work-related decisions and markedly limited in her ability to interact appropriately with supervisors.  Tr. 749-50.

Dr. Lundblad reviewed the record and completed a Psychiatric Review Technique Form and Mental Residual Functional Capacity Assessment (MRFCA) on May 26, 2011.  Tr. 753-69.  In the portion of the report containing her notes, Dr. Lundblad remarked that she generally agreed with Dr. Scott's report except on the issue of Plaintiff's ability to interact with a supervisor.  Tr. 765.  Dr. Lundblad opined that Plaintiff was capable of "appropriate supervisor interaction in a job with a suitable level of social contact and will benefit from a supportive-style supervisor." Id.

Additionally, she added four "advisories" at the end of the MRFCA including (1) that Plaintiff "[c]an understand and remember simple unrushed instructions, tasks, and procedures on

7 - OPINION & ORDER

a routine basis [and] "[w]ill occasionally need some repetition when learning new tasks"; (2) Plaintiff "[c]an perform simple unrushed routine tasks not in constant close proximity to coworkers"; and (3) Plaintiff "[c]an accept instruction and interact with a supervisor who is not overly harsh/critical and will benefit from supportive-style supervision." Tr. 769.

At the hearing, the ALJ solicited the testimony of a VE and initially presented the following hypothetical: a twenty-eight year old individual with no significant physical limitations but with all of the limitations as assessed at pages six through eight of Dr. Scott's opinion. Tr. 429-31. The VE responded that Dr. Scott's limitation of a marked impairment in interacting with a supervisor, plus a moderate impairment in interacting with co-workers and the general public, created "significant barriers" to holding a job. Tr. 432. She reiterated that the marked impairment in interacting with supervisors was a very serious barrier. Id. She could identify no unskilled work with that limitation. Id.

Next, the ALJ relied on Dr. Lundblad's report and presented a new hypothetical with the individual having the ability to remember simple, unrushed instructions, tasks, and procedures, on a routine basis, but who would occasionally need some repetition when learning new tasks and who could perform simple, unrushed, routine tasks, not in constant close proximity to coworkers. Tr. 433. The ALJ summarized these limitations as "just mean[ing] an individual [who] should be able to perform the duties, or whatever the tasks are, as – by them self, not part of a crew." Id. He explained that this meant very limited contact with the public and brief or occasional contact with coworkers. Id. He noted that this was "different than what we just talked about" and quoted the portion of Dr. Lundblad's report stating that the individual "can accept instruction and interact with [a] supervisor who is not overly harsh or critical, and has a

8 - OPINION & ORDER

supportive style of supervision – can accommodate simple, occasional changes in tasks." Id.

In response, the VE identified several jobs that such an individual could perform: (1) hand folder of paper goods; (2) garment marker/sorter and pricer; and (3) dressing room attendant. Tr. 433-34.

Plaintiff's counsel then inquired of the VE and asked follow-up questions regarding some of the limitations in Dr. Lundblad's report that the ALJ had included in his second hypothetical. Tr. 436. The attorney asked the following question after identifying specific parts of the report:

> I want to go back to the previous hypothetical and ask you about some of the specific provisions. And I'm reading, as you were, Judge Madden, from exhibit 24F, Page 3. Says, "Will occasionally need some repetition when learning new tasks for simple, unrushed --" and says "capable [ . . .] can't understand and remember simple, unrushed instructions." So that means all instructions are simple, unrushed instructions tasks and procedures. And even with that will occasionally need some repetition when learning new tasks. Does that instruction interfere with the performance of any of the jobs that you indentified [sic]?"

Id. (brackets and ellipsis in original).[1]

The VE responded that the instruction by Dr. Lundblad did interfere with the performance of jobs the VE had previously identified because the expectation with unskilled jobs is that they are learned within the first ten days and employees are to be "pretty well" set within the first thirty days. Id. Additionally, "[t]asks are not necessarily unrushed" and "[r]edirect is not really not something that can be required over and over again through that 30-day period and, beyond. . . . [I]t could be an issue to meet the standards of the job as it exists into simple, routine effort."

---

[1] The hearing transcript indicates that the attorney misquoted the second of the two sentences from Dr. Lundblad's report when he stated "can't understand . . . " instead of "can understand . . . ." I agree with Plaintiff that the next sentence, in which the attorney paraphrased what he just read, sufficiently corrected the error such that the VE understood what the report actually said, especially when the VE's response to the question included the statement that "[t]asks are not necessarily unrushed." Tr. 436.

9 - OPINION & ORDER

Id.

Plaintiff's counsel then asked whether, when talking about "repetition" and being unrushed, "would that basically be more akin to a sheltered workshop setting, as opposed to competitive employment[,]" to which the VE answered affirmatively and stated "that's assisted work usually in the beginning and testing the work environment and that kind of thing." Tr. 437. Plaintiff's counsel next asked about Dr. Lundblad's limitation that tasks not be in constant, close proximity to coworkers and whether that affected performance of any of the identified jobs. Id. The VE indicated that the answer depended on what "close proximity" meant because every workplace has coworkers. Id. Nonetheless, she explained that a description of a job that can be performed independently meant that the employee can go to a work station and "pretty much" tend to his or her business and "do what they do." Id. She thought the dressing room attendant required being around coworkers more often that that, including sharing information. Id.

In terms of supervision, Plaintiff's counsel asked the VE about Dr. Lundblad's restriction to a supervisor who is not "overly harsh/critical" and who would offer a "supportive style of supervision." Tr. 438. Plaintiff's counsel inquired whether that was more "akin" to a sheltered workshop or whether the VE could identify a number of jobs in significant numbers where one could say that the employee was not going to have an overly harsh critical supervisor who has a supportive style of supervision. Id. In response, the VE noted it would be "unpredictable in the competitive workplace" and "would be more in the sheltered area where time and one-on-one attendance is given to progress." Id. Finally, Plaintiff's counsel asked whether considering "that limitation," which obviously referred to the limitation regarding supervision that Plaintiff's counsel had just posed to the VE, along with the limitations that tasks be unrushed and the need

10 - OPINION & ORDER

for occasional repetition for learning new tasks, would these "situations" exist in the unskilled workforce competitively.  Id.  The VE answered "No."  Id.

In discussing the evidence, the ALJ credited Dr. Scott's opinion "to the extent it is consistent with the above residual functional capacity" which, as indicated above, assessed Plaintiff as having a full range of work at all exertional levels but with non-exertional limitations of simple instructions and tasks, occasional reminders as to her duties, only occasional and brief contact with coworkers and the general public, and the ability to accept criticism from supportive supervisors.  Tr. 379, 382.  The ALJ credited Dr. Lundblad's opinion over Dr. Scott's opinion, citing the objective medical evidence, Plaintiff's reported daily activities, the findings and opinions of Plaintiff's treating sources, and the information provided by Plaintiff's mother.  Tr. 382.

Although Defendant agrees that the ALJ did not adequately address Dr. Lundblad's opinion, Defendant contends that further administrative proceedings are required to allow the ALJ to properly evaluate and resolve conflicts in the evidence.  Defendant concedes that the ALJ failed to discuss Plaintiff's possible pace limitations and failed to include Dr. Lundblad's limitation to "simple unrushed routine tasks" in his RFC, even though he adopted Dr. Lundblad's opinion.  But, Defendant contends that crediting Dr. Lundblad's opinion does not support a finding of disability based on the VE's testimony because the VE's testimony was "somewhat ambiguous." Def.'s Br. at 4.  Defendant suggests that the VE's responses to questions by the ALJ were inconsistent with her responses to questions by Plaintiff's counsel and that by the time Plaintiff's counsel concluded his questioning, it was "no longer clear that [the VE] understood" the limitations in the way they were intended.  Id. at 6.  Finally, Defendant argues that regulations

11 - OPINION & ORDER

regarding sheltered workshops describe them as a "facility especially set up for severely impaired individuals" and are intended for individuals with more significant limitations than those described by Dr. Lundblad. Id.

I disagree with Defendant. First, as I read the transcript, it was clear that Plaintiff's counsel was building upon the ALJ's second hypothetical given to the VE. Plaintiff's counsel's questions proceeded in an orderly, logical manner and asked the VE to opine on whether certain specific limitations assessed by Dr. Lundblad would, or would not, affect the employee's ability to perform competitive employment. Plaintiff's counsel then combined the pertinent limitations and asked about the cumulative effect of those limitations to which the VE clearly stated that they would preclude unskilled competitive work. I find no suggestion in the transcript that the VE misunderstood the questioning or the thrust of the limitations. The VE's testimony is not ambiguous.

Second, the VE's testimony is not that Plaintiff can work only in a sheltered workshop. Although perhaps that could be a suitable option for Plaintiff as she suggests in her Reply Memorandum, I read Plaintiff's counsel's questions as asking the VE whether an employee with Plaintiff's limitations as described by Dr. Lundblad could find competitive employment or whether some of those limitations present a situation "more akin" to that found in a sheltered workshop. The VE indicated that the limitations were incompatible with competitive, unskilled employment and that they were more likely to be found in a "sheltered area." But, she did not testify that they exist only in a sheltered workshop or that such an environment was the only suitable work environment for Plaintiff. Rather, and what is important here, she indicated that the limitations could not be predictably or consistently found in competitive employment.

12 - OPINION & ORDER

While Dr. Lundblad disagreed with Dr. Scott's opinion that Plaintiff had a marked limitation in interacting with a supervisor, she herself provided limitations constraining the type of supervision that Plaintiff needed in a workplace. She opined that with "appropriate supervisor interaction," a "supportive-style supervisor," and a supervisor who is not "overly harsh/critical," Plaintiff did not have a marked limitation in supervisory relationships. But, her opinion does not mean that she found Plaintiff capable of competitive unskilled employment. Accordingly, I find no inconsistency between Dr. Lundblad's opinion and the VE testimony regarding the effect of Dr. Lundblad's assessment on the competitive workforce.

Because the ALJ failed to discuss the entirety of Dr. Lundblad's opinion, the RFC failed to reflect Plaintiff's limitations. However, Dr. Lundblad's opinion, as explained by the VE, establishes that there are no jobs in the competitive workforce for an individual with Plaintiff's limitations. Therefore, no useful purpose would be served by further administrative proceedings. The record has been fully developed and establishes disability.

## CONCLUSION

The Commissioner's decision is reversed and remanded for an award of benefits.

IT IS SO ORDERED.

Dated this 19 day of June, 2013

Marco A. Hernandez
United States District Judge

13 - OPINION & ORDER